**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 15-1003**

**RK MECHANICAL, INC.; THE UNITED STATES FOR THE USE OF RK MECHANICAL, INC.**

    **Plaintiffs,**

 **vs.**

**CENTERRE CONSTRUCTION, INC.; MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC; BERKLEY REGIONAL INSURANCE COMPANY; BERKLEY SURETY GROUP, LLC**

    **Defendants.**

---

**RK MECHANICAL, INC.'S COMPLAINT AND JURY DEMAND**

---

For its Complaint in this matter, RK Mechanical, Inc. ("RK Mechanical") for itself, and the United States for the use of RK Mechanical, Inc., alleges the following.

**THE PARTIES**

1. RK Mechanical is a Colorado corporation and has its principal place of business in Denver, Colorado.

2. Defendant Centerre Construction, Inc. ("Centerre Construction") is a Colorado corporation and has its principal place of business in Denver, Colorado.

3. Defendant Matsuo Engineering Centerre Construction a Joint Venture, LLC ("Joint Venture") is a Colorado limited liability company and has its principal place of business in Golden, Colorado. The Joint Venture is comprised of Matsuo Engineering, LLC (a Colorado limited liability company) and Centerre Construction.

4.      Defendant Berkley Regional Insurance Company ("Berkley Regional Insurance") is a Delaware corporation and has its principal place of business in Urbandale, Iowa.

5.      Defendant Berkley Surety Group, LLC ("Berkley Surety") is a Delaware limited liability company and has its principal place of business in Morristown, New Jersey.

## JURISDICTION AND VENUE

6.      RK Mechanical has not been paid in full for the labor and material it furnished or supplied in connection with the Project.  RK Mechanical brings this action pursuant to 40 U.S.C. §3133(b)(1) to recover from the Payment Bond furnished by the Joint Venture.

7.      This Court has jurisdiction pursuant to 40 U.S.C. §3131 because the Project concerned the "construction, alteration, or repair of any public building or public work of the Federal Government."

8.      Venue is proper in this Court pursuant to 40 U.S.C. §3133 because "the contract was to be performed and executed" in the District of Colorado.

## GENERAL ALLEGATIONS

9.      RK Mechanical is a family-owned business that has been supplying mechanical, fabrication, and service solutions for construction, industrial, and commercial clients for more than five decades.  RK Mechanical's mechanical contracting business provides integrated project planning, and fabrication and installation of the sheet metal, plumbing, and piping used in the construction of a myriad of projects.

10.     RK Mechanical employs more than 1,200 people.  RK Mechanical's fabrication shop has 90,000 square feet of production space, which includes 30,000 square feet dedicated to sheet metal, 30,000 square feed dedicated to piping, and 20,000 square feet dedicated to plumbing.

11. RK Mechanical's BIM (building information modeling) and CAD (computer aided drafting) team supports its mechanical construction and fabrication work. Using information provided to it by others, RK Mechanical's BIM/CAD team and fabrication shop have the capability, if the project requires, to cut and assemble ductwork, piping, and other metal products and package them in "spools" on palettes, which are assembled according to the order in which the products will be incorporated into the project, per the general contractor's construction schedule. This method of packaging spools in the shop for delivery and installation in the field is called "just in time delivery."

12. The United States Custom House in Denver, Colorado was built in 1931. It houses nine government agencies and approximately 200 employees within approximately 250,000 square feet in its five floors above grade, basement, sub-basement, and a partial floor below the sub-basement. The Custom House is primarily used as office space, but contains a daycare center and space for the United States Bankruptcy Court. Other tenants in the building include the Small Business Administration, Military Entrance Processing Station, Railroad Retirement Board, and the Departments of the Army, Justice, Labor, Treasury, and Homeland Security.

13. In 2009, the United States General Services Agency ("GSA") began a design/build capital improvement project to improve the energy efficiency of the Custom House by replacing air handling units, electrical switch gears, and motor control centers; installing an induction unit and condensate piping system with variable air volume controls; installing updating lighting and controls; converting the building to direct digital controls; installing a dedicated high efficiency boiler plant and isolation valves throughout the building; replacing all brass domestic, chilled, and hot mechanical piping; replacing ceilings throughout the building;

upgrading the life safety lighting system; improving the interior finishes in the building corridors and elevator lobbies; and upgrading the windows to blast-resistant assemblies (the "Project").

14.     On December 2, 2009, the Joint Venture entered into an agreement with Centerre to provide the services, labor, materials, equipment and all other things necessary for the design and construction of the Project.

15.     On or about March 10, 2010, the Joint Venture submitted a proposal to the GSA to design and build the Project.

16.     On or about March 17, 2010, the GSA awarded written contract number GS-08P-10-JB-C-0007 to the Joint Venture to design and build the Project.

17.     On or about March 8, 2010, RK Mechanical submitted to the Joint Venture a proposal for the installation of all plumbing and mechanical systems as more fully described in the proposal.

## THE AGREEMENT

18.     On September 13, 2010, RK Mechanical and Centerre entered into a Design-Build Agreement for the design and construction of the mechanical and plumbing work for $9,709,404.00 ("Agreement") attached as Exhibit A.

19.     The Agreement obligated RK Mechanical to "provide all design, construction and other aspects of the Work consistent with the Contract Documents."

20.     According to the Agreement, "[Centerre] … shall perform [its] responsibilities, obligations and services in a timely manner to facilitate [RK Mechanical's] timely and efficient performance and so as not to delay or interfere with [RK Mechanical's] performance of its obligations under the Contract Documents."  Ex. A §1.5.1.

21. According to the Agreement, "[u]pon request, [Centerre] shall provide [RK Mechanical] with the Project Schedule and appropriate updates thereto." Ex. A §3.3.4.

22. According to the Agreement, "time is of the essence with respect to the dates and times set forth in the Contract Documents and the Project Schedule." Ex. A §5.3.1.

23. According to the Agreement, "[m]inimal staging area is provided at the New Custom House site ... Subcontractor shall provide storage or laydown for their material and equipment at an off site location at their cost and provide 'just in time' deliveries as needed to promote continuous work flow.  Materials will be allowed to be stocked inside the building within the current phase's construction area, however this stocking/storage area will be directed by the Superintendent. … Subcontract must use 'just in time' deliveries for all deliveries." Ex. A at Agreement's Ex. B ¶14

24. According to the Agreement, "[Centerre] … shall indemnify, hold harmless and defend [RK Mechanical] from and against claims, losses, damages, liabilities, including attorneys' fees and expenses, for … property damage or destruction (other than to the Work itself) to the extent resulting from the negligent acts or omissions of [Centerre]." Ex. A §11.5.1.

25. Centerre was obligated to abate hazardous materials encountered in the Project.

26. Centerre's baseline schedule included demolition and abatement of hazardous materials in virtually every area on every floor of the Project.

27. The Agreement did not obligate RK Mechanical to abate or remediate any in situ asbestos or other hazardous materials encountered on the Project.

28. Centerre and/or the Joint Venture were responsible for scheduling and sequencing the work of RK Mechanical, other subcontractors, and others performing work on the project.

29. RK Mechanical did not control the schedule or the sequence of the work as shown in the schedule prepared by Centerre and/or the Joint Venture.

30. Centerre and/or the Joint Venture required that "RK Mechanical would execute the Work in accordance with the requirements of the Project schedule including any revisions thereto" as imposed by Centerre and/or the Joint Venture.

31. RK Mechanical reasonably relied on the information provided in the Agreement, and during the procurement stage, in pricing its work for the Project.

**THE SCHEDULE**

32. On March 28, 2010, the Joint Venture issued a Project Schedule, with a planned "notice to proceed" of April 5, 2010, 100% construction drawings by March 31, 2011, and Project completion on December 28, 2012. The Joint Venture and/or Centerre provided this schedule to RK Mechanical prior to entering into an Agreement with RK Mechanical.

33. RK Mechanical reasonably relied on the March 28, 2010 schedule.

34. On July 6, 2011, the Joint Venture issued a revised schedule, with a planned notice to proceed of April 5, 2010, 100% construction drawings by March 31, 2011, and Project completion on August 30, 2013. The Joint Venture and/or Centerre provided this schedule to RK Mechanical.

35. The July 6, 2011 schedule was 75 pages and included more than 1500 activities.

36. As of July 6, 2011, the Joint Venture's design for the Project was complete.

37. Per the July 6, 2011 schedule, the Joint Venture planned to begin work at the top floor and proceed to the basement. Work on each floor was further sub-phased into sequential work in different "areas."

38. A planned exception to the top-down sequence of work was the work on two "stacks" of bathrooms. The bathrooms were located on identical locations on each floor (one stack on each end of the hallways), and the piping and other connections between the bathrooms were oriented vertically. Working on the "stacks" would allow for RK Mechanical to efficiently install the bathroom plumbing piping and was planned by Centerre.

39. In planning its fabrication shop efforts, anticipated labor requirements, material orders, and in making other preparations to comply with Centerre's requirement that RK Mechanical employ the "just in time" delivery method, RK Mechanical relied on Project schedules and sequences of work provided by Centerre.

**SCHEDULE DELAY, INEFFICIENCY, AND ACTIVE INTERFERENCE**

40. Centerre caused RK Mechanical to suffer damages resulting from delay and inefficiency in progressing the work.

41. Actual work did not proceed according to the planned sequence, and instead proceeded in an unpredictable manner. Centerre would direct RK Mechanical's forces to skip areas, then go back when the original sequenced areas were ready to receive RK Mechanical's work. RK Mechanical was prevented from working on and not provided access to the "stacks" of bathrooms, as planned. Having to work according to an unpredictable sequence caused significant inefficiency in RK Mechanical's work.

42. RK Mechanical's "just in time" deliveries were coordinated to proceed according to the planned project schedule and sequence. Because the project schedule and sequence failed to follow the plan, by way of example RK Mechanical was forced to refuse deliveries, store materials on site (where some of the materials were damaged and had to be re-fabricated), store

materials off site, re-deliver previously refused deliveries, and spend unplanned time to reconfigure the "just in time" delivery plan.

43. RK Mechanical was forced to stand-by and wait for delivery of the materials required for installation at the location Centerre directed for the work. RK Mechanical was not afforded a reasonable time to plan for efficient "just in time" deliveries.

44. RK Mechanical was forced to move equipment and labor from area to area as directed by Centerre or as areas of work became accessible or as Centerre or its other subcontractors finished predecessor work.

45. RK Mechanical's forces demobilized and remobilized on multiple occasions when the planned areas of work were unavailable. Because RK Mechanical's scope of work required specialized forces (licensed plumbers and certified welders, for example), RK Mechanical could not simply allocate interchangeable labor from one part of the project to another.

46. When RK Mechanical was able to access the work areas, it often found that Centerre had directed other trades to work in the same area, causing lost time to wait for the other trades to clear the area so that RK Mechanical could access the work, or causing inefficiency by partially restricting access to areas in which to work.

47. RK Mechanical often had to fabricate materials on site, at a rate less efficient than doing so in its fabrication shop.

48. Centerre failed to manage the project in accordance with the Agreement and reasonable construction standards.

49. Centerre failed to incorporate information provided by RK Mechanical for the purpose of improving the Project schedule.

50. Centerre failed to adjust its schedule to reflect as-built field conditions.

51. Centerre failed to coordinate tenant movement.

52. Centerre failed to anticipate and remediate hazardous materials.

53. Centerre imposed on RK Mechanical unplanned and unknown work restrictions and requirements relating to historical preservation.

54. During the course of its work on the Project, RK Mechanical experienced active interference with its work from others, including but not limited to Centerre, the Joint Venture, and other trade subcontractors. The active interference gave rise to substantial labor, cost, and time impacts to RK Mechanical.

55. As a result of Centerre's active interference and other failures, RK Mechanical suffered damages in an amount to be determined at trial.

56. RK Mechanical's investigation of Centerre's impacts is ongoing. On at least three occasions since the Project ended, RK Mechanical requested the Joint Venture's schedule. Despite having a contractual obligation to provide schedules and schedule updates, Centerre has refused to do so.

57. RK Mechanical last performed labor or supplied material more than 90 days but less than 365 days before the filing of this Complaint.

## PAYMENT

58. Through change orders and other contract adjustments, the current contract amount is $11,975,179.

59. Centerre has paid, and RK Mechanical has received, $11,899,222.

60. $75,957 is due and owing to RK Mechanical.

## THE BOND

61. Berkley Regional Insurance, as Surety, issued Payment Bond Number 0146076, for the penal sum of $23,337,944.00 on April 5, 2010, naming the Joint Venture as Principal ("Payment Bond"). The Payment Bond binds Berkley and the Joint Venture jointly and severally for the obligations set forth in the Joint Venture's Contract with the Government, Number GS-08P-10-JB-C-007 dated March 17, 2010. The Payment Bond as provided by Berkley Surety is attached as Exhibit B.

62. Berkley Surety has been appointed by Berkley Regional Insurance to manage Berkley Regional Insurance's surety business including the servicing of all claims and legal actions arising therefrom.

63. On August 8, 2014, RK Mechanical delivered by certified mail to Centerre and the Joint Venture notice of its Claim for Delay and Adjustment. RK Mechanical's Notice letter included backup for RK Mechanical's calculation of its delay and inefficiency damages.

64. RK Mechanical has provided notice of its claims to Berkley Surety and Berkley Regional Insurance.

## COUNT I: BREACH OF CONTRACT
### (Against Centerre)

65. RK Mechanical incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

66. RK Mechanical and Centerre entered into the Agreement, which is valid and enforceable.

67. Centerre required RK Mechanical to employ the "just in time" delivery method.

68. RK Mechanical was provided no reasonable alternative to the required "just in time" delivery method. Centerre provided limited staging area to RK Mechanical.

69. Centerre controlled the schedule and sequence of when the work by others would be complete, and when RK Mechanical would have access to the portions of the Project to install each "just in time" delivery.

70. Centerre failed to proceed with the work according to the planned schedule and sequence, prevented RK Mechanical from working in the bathroom "stacks", adversely impacted RK Mechanical's "just in time" deliveries, required RK Mechanical to demobilize and remobilize in reaction to the changed schedule and sequence, forced RK Mechanical to move labor, equipment, and materials from location to location within the Project, directed RK Mechanical's forces to work in the same area as other trade subcontractors, caused RK Mechanical to fabricate materials onsite, failed to use information provided by RK Mechanical in developing the sequence, schedule and schedule updates, failed to coordinate tenant movement, failed to anticipate and remediate asbestos, and imposed on RK Mechanical unplanned work restrictions and requirements relating to historical preservation.

71. Centerre actively interfered with the progress and performance of RK Mechanical's work.

72. As a result of Centerre's acts and failures, and active interference, the work on the Project was delayed and RK Mechanical was forced to proceed with the delayed work inefficiently.

73. Centerre failed to make timely and complete payments to RK Mechanical per the Agreement.

74. Centerre materially breached the Agreement.

75. RK Mechanical substantially performed its part of the Agreement.

76. RK Mechanical has satisfied all conditions precedent, if any.

77. As a result of Centerre's breaches, RK Mechanical has been damaged in an amount to be determined at trial.

## COUNT II: MILLER ACT
**(Against the Joint Venture, Berkley Regional Insurance, and Berkley Surety)**

78. RK Mechanical incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

79. RK Mechanical furnished labor and material in carrying out the work provided for in the Agreement.

80. Berkley Regional Insurance and Berkley Surety furnished the Payment Bond pursuant to the Miller Act, 40 U.S.C. § 3131, for the purpose of satisfying any payment obligations to RK Mechanical.

81. RK Mechanical has not been paid in full within 90 days of its last date of performance.

82. RK Mechanical satisfied all notice and jurisdictional requirements.

83. Berkley Regional Insurance, Berkley Surety, and the Joint Venture, jointly and severally, are liable to RK Mechanical for the damages caused by the Joint Venture.

WHEREFORE, RK Mechanical, Inc. and the United States for the use of RK Mechanical, Inc. prays for judgment against Defendants in an amount to be proven and in conformity with the evidence. RK Mechanical further prays for its costs and expenses incurred herein, including its attorneys fees pursuant to the Agreement, and for such further relief as the Court deems just.

**RK MECHANICAL, INC. DEMANDS A JURY ON ALL ISSUES SO TRIABLE**

Dated May 11, 2015.

*/s/ Buck S. Beltzer*
Buck S. Beltzer, Colo. Reg. # 37804
Beltzer, LLC
Post Office Box 202396
Denver, Colorado  80220
720-277-2113
Buck@BeltzerLLC.com
Attorney for RK Mechanical, Inc.

13