## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01003

RK MECHANICAL, INC.; THE UNITED STATES FOR THE USE OF RK MECHANICAL, INC.,

      Plaintiff,

v.

CENTERRE CONSTRUCTION, INC.; MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC; BERKLEY REGIONAL INSURANCE COMPANY; BERKLEY SURETY GROUP, LLC,

      Defendants.

---

## MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY, PLAINTIFFS' CLAIMS PENDING COMPLETION OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), the inherent power of the Court, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, Defendants, Centerre Construction, Inc. ("CCI"), Matsuo Engineering Centerre Construction a Joint Venture, LLC (the "JV"), Berkley Regional Insurance Company ("BRIC"), and Berkley Surety Group, LLC ("BSG") (collectively "Defendants"), by and through their undersigned counsel, hereby move this Court to dismiss Plaintiffs, RK Mechanical, Inc.'s ("RKMI") and the United States for the use of RK Mechanical, Inc.'s (collectively "Plaintiffs") claim for relief under the Miller Act, 40 U.S.C. § 3133, and RKMI's breach of contract claim for failure to state a claim upon which relief can be granted, or, in the alternative, to stay Plaintiffs' claims pending resolution of

mandatory contractual alternative dispute resolution procedures, including administrative dispute resolution procedures, mediation and/or arbitration.

## I.   FACTS

1.      On or about May 12, 2015, Plaintiffs filed a complaint against Defendants in the United States District Court for the District of Colorado (the "Complaint").

2.      In 2009, the United States General Services Agency ("GSA") sought design and construction services to "improve the energy efficiency of the" United States Customs House in Denver, Colorado (the "Project").  Complaint p. 3-4, ¶¶ 12-13.

3.      The GSA awarded a contract to the JV "to design and build the Project" (the "Prime Contract").  Complaint p. 4, ¶16.

4.      The JV subcontracted with CCI to provide services for the design and construction of the Project.  Complaint p. 4, ¶14.

5.      CCI subsequently subcontracted with RKMI for "the design and construction of the mechanical and plumbing work" for the Project (the "Agreement"). Complaint p. 4, ¶18, Exhibit A.  RKMI does not have, nor does the Complaint allege that RKMI had or has, any contractual relationship with the JV.

6.      In the Agreement, RKMI agreed to submit any claims arising from, or related to, problems caused by the GSA for resolution under the administrative dispute procedures set forth in the Prime Contract.  Agreement Section 13.3.1 states:

> To the extent a claim, dispute or controversy arises out of, or relates to, problems caused by Owner [GSA] or for which Owner is responsible ("Owner Disputes"), **such Owner Disputes shall be resolved pursuant to the dispute resolution clause set forth in the Prime Design-Build Agreement.**  Both Design-Builder [CCI] and Design-Build Subcontractor [RKMI] agree to cooperate in the

> presentation and prosecution or defense of Owner Disputes. If, after a request for an extension of time or additional compensation from Design-Build Subcontractor, Design-Builder believes that the event causing the delay or additional compensation is the responsibility of Owner, then Design-Builder will cooperate and assist Design-Build Subcontractor in presenting a request for an extension of time or additional compensation to Owner.

Complaint, p. 4, ¶18, Exhibit A, p. 22 of 68 (emphasis added). The administrative dispute procedures set forth in the Prime Contract require the claimant to submit a certified claim to the contracting officer for determination in compliance with the requirements of federal regulations and the Contract Disputes Act, 41 U.S.C. § 7101 *et. seq.* (the "CDA").

7.      In the Agreement, RKMI agreed to liquidate all of CCI's potential liability for disputes arising from, or related to, problems caused by the GSA to those amounts CCI might recover from the GSA on RKMI's behalf. Agreement Section 13.3.2 states:

> Notwithstanding any other provisions herein to the contrary, Design-Build Subcontractor agrees to accept the relief as to a time extension or additional compensation obtained from Owner, if any, as well as all other aspects of the final decision following appeal or the expiration of the time for appeal, as full and final resolution of any Owner Dispute. **Design-Builder shall have no further liability or responsibility to Design-Build Subcontractor.**

Complaint, p. 4, ¶18, Exhibit A, p. 22 of 68 (emphasis added).

8.      Moreover, RKMI agreed to liquidate all of CCI's potential liability for changes or extra work performed to those amounts CCI and the JV might recover from the GSA, less applicable mark-up. Agreement Section 12.6.4 states:

> It is understood and agreed by Design-Build Subcontractor that any increase in Contract Sum or extension to the Contract time for changes or **extra work performed** shall be limited to the amount of dollar increase or time extension awarded by Owner or Joint Venture and thereafter to Design-Builder, less applicable mark-up.

Complaint, p. 4, ¶18, Exhibit A, p. 21 of 68 (emphasis added).

9.      Agreement Section 13.4 governs disputes not involving the GSA.   Agreement Section 13.4.3 provides that disputes not involving the GSA, which cannot be resolved through discussion between senior representatives of CCI and RKMI, will be submitted to non-binding mediation.  Complaint, p. 4, ¶18, Exhibit A, p. 22 of 68.

10.      In the event such non-binding mediation failed to resolve a dispute not involving the GSA, RKMI agreed to submit the dispute to arbitration.  Agreement Section 13.5.1 states:

> Any claims, disputes or controversies between the parties arising out of or relating to the Agreement, or the breach thereof, which have not been resolved in accordance with the procedures set forth in Section 13.4 above shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the AAA then in effect, unless the parties mutually agree otherwise.

Complaint, p. 4, ¶18, Exhibit A, p. 23 of 68.

11.      RKMI also agreed that such arbitration would be final and binding.   Agreement Section 13.5.2 states:

> The award of the arbitrator(s) shall be final and binding upon the parties without the right of appeal to the courts. Judgment may be entered upon it in accordance with applicable law by any court having jurisdiction thereof.

Complaint, p. 4, ¶18, Exhibit A, p. 23 of 68.

12.      On or about August 8, 2014, RKMI submitted to the JV and CCI a letter in which it asserted a claim against the GSA for the cost of extra work performed as a result of delay. RKMI invoked Agreement Section 13.3.1, and asked CCI and the JV to pass its claim through to the GSA (the "Pass-Through Claim").  Attached as **Exhibit 1**.

13.     The Pass-Through Claim identifies the amount RKMI sought to recover from the GSA, but it did not state with substantial accuracy what amount, if any, RKMI sought from CCI, the JV, or the Bond.  In fact, the Pass-Through Claim makes no mention of any demand or claim against CCI, the JV or the Bond.

14.     The Pass-Through Claim was not in compliance with the regulations governing claims against the federal government under the CDA, including, *inter alia*, the requirement that a claim against the federal government for an amount in excess of $100,000 be certified by the claimant.  48 C.F.R. § 33.207.

15.     Other than the Pass-Through Claim itself, RKMI did not tender any notice of its alleged damages to CCI or the JV.

16.     On or about March 9, 2015, CCI and the JV informed RKMI that they could not submit the Pass-Through Claim to the GSA in the form that it was submitted by RKMI because the claim was uncertified and otherwise not in compliance with federal regulations.  However, CCI and the JV informed RKMI that they would promptly pass RKMI's claim through to the GSA if RKMI corrected these errors.  If RKMI would submit the claim in accordance with the requirements of the Agreement and applicable law, including the CDA, CCI and the JV would pass it through to GSA.

17.     Instead of submitting a compliant claim, RKMI filed the Complaint in violation of Agreement Sections 13.3.1 and 13.3.2.  The Complaint seeks the same damages that RKMI sought in the Pass-Through Claim against the GSA.

18.     The Complaint alleges two causes of action:

    1) A breach of contract claim against CCI (the "Contract Claim"), Complaint p.
       10; and

2) A Miller Act claim against JV, BRIC and BSG (the "Miller Act Claim"), Complaint p. 12.

19.    In support of the Miller Act Claim, the Complaint attaches a payment bond (the "Bond") executed by BRIC as surety and the JV as principal.  Complaint, p. 10, ¶61, Exhibit B. BSG is not a signatory, surety, or principal on the Bond.

20.    The Complaint "prays for judgment against Defendants in an amount to be proven."  Complaint p. 12.  The Complaint does not state with substantial accuracy the amount claimed on the Bond as required by 40 U.S.C. § 3133(b)(2).

## II.    LEGAL ARGUMENT

### A.    The Court Should Dismiss RKMI's Claims Under Fed. R. Civ. P. 12(b)(6).

#### 1.    The Court Should Dismiss Plaintiffs' Miller Act Claim (Count II) Against BSG Because BSG is Not a Party to the Bond.

40 U.S.C. § 3131(b)(2) requires the prime contractor in a federal public works contract to procure a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract."  40 U.S.C. § 3133(b) gives such persons the right to bring a civil action "on the payment bond."  "The Miller Act grants to the plaintiff the right to recover from the principal or surety, or both, for work and material supplied." *U. S. for Use & Benefit of Statham Instruments, Inc. v. W. Cas. & Sur. Co.,* 359 F.2d 521, 524 (6th Cir. 1966).  The Miller Act does **not** grant a right to bring a civil action against any other party.  40 U.S.C. § 3133(b).

Here, the Bond identifies the JV as the principal and BRIC as the surety.  It binds the JV and BRIC to the United States for payment per the requirements of 40 U.S.C. § 3131(b)(2).  It makes no mention of BSG whatsoever.  BSG is not a signatory to the Bond, it is not the principal

and it is not the surety.  BSG is BRIC's underwriting manager, it is not a co-surety or otherwise

liable on the Bond.  There is no legal basis for Plaintiffs' Miller Act Claim against BSG, and

BSG is not a proper party to a Miller Act suit on the Bond.  As such, Plaintiffs have failed to

state a claim against BSG upon which relief can be granted, and the Court should dismiss

Plaintiffs' Miller Act Claim against BSG.

>  **2.**      **The Court Should Dismiss the Plaintiffs' Miller Act Claim (Count II)
>            Against All Parties Because Plaintiffs Failed to State the
>            Amount Claimed with Substantial Accuracy, as Required by
>            40 U.S.C. § 3133 (b)(2)**

Prior to 2002, the Miller Act stated:

> [A]ny person having direct contractual relationship with a
> subcontractor but no contractual relationship express or implied
> with the contractor furnishing said payment bond shall have a right
> of action upon the said payment bond upon giving **written notice**
> to said contractor within ninety days from the date on which such
> person did or performed the last labor or furnished or supplied the
> last of the material for which such claim is made, **stating with
> substantial accuracy the amount claimed** and the name of the
> party to whom the material was furnished or supplied or for whom
> the labor was done or performed.

*Trustees of Heating, Piping & Refrigeration Pension Fund v. Milestone Const. Servs., Inc.,* 991

F. Supp. 2d 713, 718 (D. Md. 2014) (*citing* 40 U.S.C. § 270b(a)) (emphasis added).  However,

Congress amended the Miller Act effective August 21, 2002.  *Id.*  The current text of 40 U.S.C. §

3133(b)(2) states:

> A person having a direct contractual relationship with a
> subcontractor but no contractual relationship, express or implied,
> with the contractor furnishing the payment bond may bring a civil
> action on the payment bond on giving written notice to the
> contractor within 90 days from the date on which the person did or
> performed the last of the labor or furnished or supplied the last of
> the material for which the claim is made. **The action must state
> with substantial accuracy the amount claimed** and the name of

> the party to whom the material was furnished or supplied or for
> whom the labor was done or performed.

(emphasis added).

In *Trustees of Heating, Piping & Refrigeration Pension Fund,* a claimant who was not in privity with the prime contractor submitted a notice that failed to state the amount claimed with substantial accuracy. *Id.* at 720. The court held that § 3133(b)(2) of the Miller Act as amended requires "that both the action and the notice state with substantial accuracy the amount claimed." *Id.* at 719. Consequently, the court dismissed the claimant's Miller Act action for failure to state the amount claimed with substantial accuracy. *Id.* at 721.

The only notice RKMI submitted to the JV and CCI was its Pass-Through Claim. The Pass-Through Claim identifies amounts that RKMI alleged are due and owing *from the GSA*. It does not state at all, much less state with substantial accuracy, the amount that RKMI claims against CCI or the JV. RKMI's Complaint is similarly lacking in detail. The Complaint (i.e. "the action") does not state at all, much less with substantial accuracy, the amount claimed in connection with RKMI's Miller Act Claim. Thus, RKMI failed to comply with the requirement of § 3133(b)(2) "that both the action and the notice state with substantial accuracy the amount claimed." Neither the action nor the notice provide the requisite level of specificity and RKMI has, therefore, failed to meet the statutory requirements of a valid Miller Act claim. Accordingly, this Court should dismiss Plaintiffs' Miller Act Claim as against all parties for failure to state a claim upon which relief can be granted.

3. **The Court Should Dismiss the Plaintiffs' Miller Act Claim (Count II) Against All Parties Because Plaintiffs' Notice Failed to Make a Demand or Assert a Claim for Payment against CCI or the JV.**

As stated above, a claimant not in privity with the prime contractor must send a notice of its claim to the prime contractor within 90 days of the date upon which it last performed work or delivered materials.  40 U.S.C. § 3133(b)(2).  The majority of the federal circuits require that this notice must make a demand for payment to the prime contractor to support the claimant's right to proceed under the Miller Act.  *See U.S. for Use and Ben. of Water Works Supply Corp. v. George Hyman Const. Co.,* 131 F.3d 28, 42 Cont. Cas. Fed. (CCH) ¶77218 (1st Cir. 1997); *U. S. for Use and Benefit of Charles R. Joyce & Son, Inc. v. F. A. Baehner, Inc.,* 326 F.2d 556 (2d Cir. 1964); *U. S. for Use and Benefit of Jinks Lumber Co. v. Federal Ins. Co.,* 452 F.2d 485 (5th Cir. 1971); *U.S. for Use and Benefit of Blue Circle West, Inc. v. Tucson Mechanical Contracting Inc.,* 921 F.2d 911, 36 Cont. Cas. Fed. (CCH) ¶75997 (9th Cir. 1990); *Maccaferri Gabions, Inc. v. Dynateria Inc.,* 91 F.3d 1431, 41 Cont. Cas. Fed. (CCH) ¶76980 (11th Cir. 1996), *reh'g and suggestion for reh'g en banc denied,* 102 F.3d 557 (11th Cir. 1996).  The justification for this requirement was summarized by the 11th Circuit in *Maccaferri Gabions, Inc.*:

> Although courts have been somewhat lenient about enforcing the Act's requirements concerning the method by which such notice is given they have interpreted more rigidly the Act's requirements for the contents of that notice. **It is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due, and that the claim specify the subcontractor allegedly in arrears** . . . This strictness as to the contents of the notice is driven by the purpose of the notice requirement itself, which is to protect the general contractor by fixing a date beyond which, absent notice, it will not be liable for the subcontractor's debts.

91 F.3d at1437 (internal marks and cites omitted, emphasis added).[1]

RKMI's notice was entirely insufficient. As stated above, the only notice RKMI provided concerning its alleged damages or potential claims was its Pass-Through Claim. However, it asserted a claim against the GSA only. The Pass-Through Claim failed to make any demand for payment as against CCI or the JV. The Pass-Through Claim also failed to state with substantial accuracy the amount that RKMI believed it was entitled to recover from CCI and/or the JV and, further, made no mention whatsoever of the Bond or the Miller Act, let alone a potential Miller Act claim against BRIC. Finally, the Pass-Through Claim failed to identify the last day on which RKMI allegedly performed work on the Project. In short, RKMI's Pass-Through Claim failed to comply with any of the requirements set forth under the Miller Act, and the majority of Courts' interpretation thereof. In no way could the Pass-Through Claim be construed as an effective notice to the JV that RKMI intended to hold the JV and its surety accountable for RKMI's alleged damages. Consequently, the Court should dismiss Plaintiffs' Miller Act Claim for failure to state a claim because RKMI failed to meet the statutory condition precedent of providing sufficient notice to the JV of its claim against the JV and its surety.

    **4.**     **The Court Should Dismiss RKMI's Breach of Contract Claim (Count I) Because CCI has No Liability to RKMI for Damages Arising from or Related to Problems Caused by the GSA or for Extra Work Performed**

Liquidating clauses, which liquidate a contractor's liability to its subcontractor to the amounts recovered by the contractor from the owner, are generally enforceable. *See Sloan & Co. v. Liberty Mut. Ins. Co.,* 653 F.3d 175, 185 (3d Cir. 2011) (limiting a subcontractor's recovery to

---

[1] Though the 10th Circuit rejected the requirement that the notice make demand for payment on the prime contractor in dicta some 65 years ago, it would likely join the majority of the circuits were it to reconsider the issue today. *See McWaters & Bartlett v. U.S. for Use & Benefit of Wilson*, 272 F.2d 291, 295 (10th Cir. 1959).

a pro rata share of the prime contractor's actual recovery from the owner based on liquidation clauses in the subcontract and reversing judgment against the prime contractor's payment bond); *U.S. for Use & Benefit of D'Ambra Const. Co. v. St. Paul Mercury Ins. Co.,* 24 F. Supp. 2d 218, 223 (D.R.I. 1998) (holding "[the prime contractor] is liable to a subcontractor only to the extent of payments made by the federal government to [the prime contractor] for the purpose of reimbursing subcontractor work."); *Lambert Houses Redevelopment Co. v. HRH Equity Corp.,* 117 A.D.2d 227, 230-31, 502 N.Y.S.2d 433 (1986) ("Agreements liquidating the general contractor's liability in such amounts as can be recovered against the party who allegedly caused the injury have been uniformly upheld."). For example, in *Roy A. Elam Masonry, Inc. v. Fru-Con Const. Corp.* the court considered a subcontractor's breach of contract claim against the prime contractor. 922 S.W.2d 783 (Mo. Ct. App. 1996). The subcontract at issue included the following liquidation clause:

> No payment of any kind, for compensation, or for damages, or otherwise, shall be made to Subcontractor because of any such delay even though Subcontractor's extension of time request be granted, unless Owner is obligated to pay Contractor compensation or damages because of such delay, and then, as and when Owner pays such compensation or damages to Contractor, Subcontractor shall receive that share of such compensation or damages which can be agreed to or proven to have been directly attributable to such delay.

*Id.* at 786. The court held that under this clause, "[the subcontractor] was precluded from seeking such damages unless [the owner] was obligated to [the prime contractor] for the same." *Id.* at 788. The question of the owner's liability to the prime contractor for the subcontractor's claim had yet to be resolved. *Id.* The court held that the subcontractor's "action was, at best,

premature." *Id.* Consequently, the court ordered the case "remanded for dismissal of [the subcontractor's] action as premature." *Id.* at 791.

Like the subcontract at issue in *Roy A. Elam Masonry*, the Agreement between CCI and RKMI is unequivocal and unambiguous. Agreement Section 13.3.1 defines "Owner Disputes" as disputes arising from or related to problems caused by the GSA. It provides that "such Owner Disputes shall be resolved pursuant to the dispute resolution clause set forth in the Prime Design-Build Agreement." In Agreement Section 13.3.2, RKMI agreed "**to accept the relief as to a time extension or additional compensation obtained from [the GSA], if any . . . as full and final resolution of any Owner Dispute . . . [CCI] shall have no further liability or responsibility to [RKMI]**." Further, under Agreement Section 12.6.4, for extra work performed, RKMI is limited to recover from CCI "the amount of dollar increase or time extension awarded by Owner or Joint Venture and thereafter to [CCI], less applicable mark-up." On the basis of these liquidation clauses CCI has no liability to RKMI for damages arising from or related to problems caused by the GSA, or for costs of extra work performed, except to the extent CCI is able to recover such damages from the GSA.

RKMI established that its alleged damages arose from, or related to, problems caused by the GSA when it submitted its Pass-Through Claim. RKMI's Pass-Through Claim encompassed all of the damages it currently seeks from CCI in its Contract Claim, and RKMI asked CCI and the JV to pass all of these damages through to the GSA for payment. Either RKMI intended to defraud the federal government, or RKMI believed that all of its alleged damages arose from, or related to, problems caused by the GSA. Further, RKMI's Pass-Through Claim asserts that its damages were incurred to cover the costs of "additional labor and inefficiency costs." Exhibit 1,

p. 8.  Thus, RKMI's claim is for the costs of alleged extra work performed, and it arises from or relates to problems caused by the GSA.

As such, CCI was required to submit its claims in accordance with the dispute resolution set forth in the Prime Contract (Agreement Section 13.3.1), which requires the claimant submit a certified claim in compliance with the requirements of federal regulations and the CDA.  In any case, CCI's liability for RKMI's alleged damages is limited to those amounts CCI and the JV may recover from the GSA through the dispute resolution procedures in the Prime Contract.  (Agreement Sections 13.3.2, 12.6.4).  Under these procedures, RKMI was required to submit a certified claim in compliance with the requirements of federal law in order to recover any damages.  As set forth above, RKMI has not met this condition precedent to payment; RKMI failed to submit a proper claim that CCI or the JV could pass through to the GSA, despite CCI and the JV's attempts to facilitate such submission.  Thus, as in *Roy A. Elam Masonry, Inc., supra,* RKMI's claim is "at best, premature."  Consequently, its claim for payment under the contract should be dismissed for failure to state a claim upon which relief can be granted.

> **B.     In the Alternative, the Court Should Stay RKMI's Claims Pending Completion of the Mandatory Alternative Dispute Resolution Procedures in the Agreement.**

> > **1.     The Court Should Stay the Case Pending RKMI's Compliance With Administrative Dispute Resolution Procedures under the CDA.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936).  District courts will stay a Miller Act suit pending compliance with administrative dispute resolution procedures under the CDA if the parties' subcontract

specifically incorporates these procedures.  *United States v. Daniel, Urbahn, Seelye & Fuller,* 357 F. Supp. 853, 862 (N.D. Ill. 1973); *accord  United States v. Dick/Morganti*, No. C 07-02564CRB, 2007 WL 3231717, at *3 (N.D. Cal. Oct. 30, 2007) (unpublished).

For example, in *Daniel, Urbahn, Seelye & Fuller,* the court considered a prime contractor's motion to stay a subcontractor's Miller Act claim for failure to comply with CDA administrative dispute resolution procedures, which were specifically incorporated in the subcontract.  357 F. Supp. at 860-62.   The court recognized that a *general* incorporation clause may not always be sufficient to bind a subcontractor to the prime contract's CDA dispute resolution requirements.  *Id.* at 861 (internal citations omitted).  However, the court found that, where the prime contract's administrative dispute resolution clause was *specifically* incorporated into the contract, a subcontractor was required to exhaust its administrative remedies prior to pursuing its rights under the Miller Act:

> While plaintiff is not barred from filing this suit, it is barred from proceeding further until it exhausts its administrative remedies. **It explicitly agreed to follow those procedures and it cannot now claim that it is not obligated to do so.** At this point in the lawsuit it does not appear that requiring it to do so would be contrary to the purposes of the Miller Act.  Thus, this court finds that plaintiff has not waived all its Miller Act rights and therefore this proceeding will be stayed pending the outcome of the disputes clause proceeding.

*Id.* at 862.  (Emphasis added).

The court in *Dick/Morganti* took this reasoning even further.   There, as in *Daniel, Urbahn, Seelye & Fuller* , the subcontract did not seek to bind subcontractors to a CDA dispute resolution process using a general incorporation clause.  2007 WL 3231717, at *2.  Rather, the dispute resolution clause was specifically incorporated into the subcontract.  *Id.*  Nonetheless,

the subcontractor-plaintiffs argued that the court could not issue a stay of their Miller Act claims

pending compliance with the CDA dispute procedures mandated pursuant to their subcontract.

The plaintiff contended that such a stay would be tantamount to a waiver of their Miller Act

rights under 40 U.S.C. § 3133(c).   *Id.* at *3.   The court examined the legislative history of the

Miller act, explaining that Section 3133(c) was added to the Miller Act by amendment in 1999

and provides that:

> A waiver of the right to bring a civil action on a payment
> bond required under this subchapter is void unless the
> waiver is –
>
> (1) in writing;
> (2) signed by the person whose right is waived; and
> (3) executed after the person whose right is waived
> has furnished labor or material for use in the
> performance of the contract.

*Id.* (citing 40 U.S.C. § 3133(c)).   The court then found that:

> The legislative history forcefully demonstrates that . . . § 3133(c)
> does not apply to stays which merely postpone a subcontractor's
> Miller Act right to sue. Congress explained that § 3133(c) was not
> intended to:
>
> > *void subcontract provisions requiring arbitration or other*
> > *alternative methods of resolving disputes. Such provisions*
> > *would remain enforceable with a claimant's Miller act*
> > *rights preserved by a timely suit that can be stayed pending*
> > *the outcome of the subcontract dispute resolution*
> > *procedure.* The bill respects the freedom of the parties to
> > the subcontract to specify means to resolve their disputes
> > and the exclusive jurisdiction of the district court to decide
> > issues arising under the Miller Act.

*Id.* (*citing* H.R.Rep. No. 106-277, at 5 (1999)) (emphasis by the court).   The court also

determined that "because the Contract Disputes Act includes stringent time limitations, see 41

U.S.C. § 605(c)(2), resolution may be reached in a more timely manner."   *Id.* at 2.

Consequently, the court held "that the temporary stay at issue does not effect a "waiver" of the Subcontractors' Miller Act rights."  Accordingly, the court stayed the plaintiff's Miller Act claims, pending plaintiffs' compliance with CDA dispute resolution procedures incorporated in its subcontract. *Id.* at 3-4.

Agreement Section 13.3.1 states that "[t]o the extent a claim, dispute or controversy arises out of, or relates to, problems caused by Owner or for which Owner is responsible ("Owner Disputes"), such Owner Disputes shall be resolved pursuant to the dispute resolution clause set forth in the Prime Design-Build Agreement."  As in *Daniel, Urbahn, Seelye & Fuller,* this is a specific incorporation of the dispute resolution procedures from the JV's contract with the GSA.  It is not a general incorporation clause of the type that was at issue in *Fanderlik-Locke*.  Further, as stated in both *Daniel, Urbahn, Seelye & Fuller* and *Dick/Morganti,* a stay would not effect a waiver of RKMI's Miller Act rights.  Indeed, a stay is consistent with Congress's directive that "provisions requiring . . . alternative methods of resolving disputes . . . would remain enforceable with a claimant's Miller act rights preserved by a timely suit that can be stayed pending the outcome of the subcontract dispute resolution procedure."  H.R.Rep. No. 106-277, at 5 (1999).

As stated above, RKMI's alleged damages arise from, or relate to, problems caused by the GSA.  Pursuant to the Agreement, RKMI is required to submit these types of claims in a manner consistent with the requirements of the Prime Contract (Agreement Section 13.3.1); the Prime Contract, in turn, requires that these claims be adjudicated using the administrative dispute resolution procedures mandated by the CDA.  Upon RKMI's submission of a valid, certified claim that is compliant with the requirements of the Prime Contract, federal regulations and the

CDA, CCI will comply with its contractual obligations and pass RKMI's claim through to the GSA for timely resolution.   Until that time, RKMI has failed to comply with the dispute resolution procedures outlined in the Agreement.   Therefore, if this Court does not dismiss RKMI's claims – which Defendants maintain it should – the Court should stay this action pending resolution of RKMI's claims through the contractually-mandated CDA administrative dispute resolution procedures.

> **2.      To the Extent RKMI Argues that its Claims Arise Independently of the GSA, the Court Should Stay the Case Pending Non-binding Mediation and/or Arbitration.**

Based upon RKMI's Pass-Through Claim, Defendants understand that RKMI alleges that its damages arise from or relate to problems caused by the GSA.   As such, RKMI's claims must be submitted to the GSA in compliance with the administrative dispute resolution process, as discussed above.   However, to the extent that RKMI argues that its alleged damages are not related to problems caused by the GSA, but rather relate to problems for which CCI or the JV is allegedly responsible, RMKI's claims are nevertheless subject to mandatory arbitration.

The FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l*

*Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (U.S. 1983).  It is black letter law that a Miller Act claim should be stayed pending compliance with a mandatory arbitration clause in a subcontract.  *See U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.,* 750 F.2d 1422 (9th Cir. 1985); *U. S. for Use & Benefit of Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc.,* 364 F.2d 705 (2d Cir. 1966); *U.S. ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.,* 672 F. Supp. 2d 92 (D.D.C. 2009); *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.,* 239 F.R.D. 404 (W.D. Pa. 2006); *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.,* 349 F. Supp. 2d 934 (D. Md. 2004); *U.S. ex rel. Tanner v. Daco Const., Inc.,* 38 F. Supp. 2d 1299 (N.D. Okla. 1999); *U.S. for Use of DeLay & Daniels, Inc. v. Am. Emp. Ins. Co. of Mass.,* 290 F. Supp. 139 (D.S.C. 1968).

To the extent RKMI argues that its claims do not arise from or relate to problems caused by the GSA, these claims fall within the dispute resolution procedures outlined in Agreement Sections 13.4 and 13.5.  Agreement Section 13.4.3 requires RKMI to attempt to resolve any such claim with CCI in non-binding mediation.  If that fails, RKMI is then required to submit its claim to final and binding arbitration under Agreement Section 13.5.1 and 13.5.2.  In the event the Court does not dismiss RKMI's claims or order RKMI to comply with the administrative dispute resolution procedures under the CDA, the Court should stay this action pending arbitration of RKMI's claims.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety pursuant to  Fed. R. Civ. P. 12(b)(6).  In the alternative, Defendants

requests that this action be stayed pending the resolution of the claims in the manner required by the Agreement, the FAR, the CDA and the FAA.

Dated:  July 29, 2015

Respectfully submitted,

/s/ Edward T. DeLisle
Edward T. DeLisle, Esquire
Cohen Seglias Pallas
Greenhall & Furman, PC
30 South 17th Street, 19th Floor
Philadelphia, PA  19103
Telephone:  (215) 564-1700
Facsimile:  (215) 564-3066
edelisle@cohenseglias.com

Attorney for Defendants,
Centerre Construction, Inc., Matsuo
Engineering Centerre Construction a Joint
Venture, LLC, Berkley Regional Insurance
Company, and Berkley Surety Group, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01003

RK MECHANICAL, INC.; THE UNITED STATES FOR THE USE OF RK MECHANICAL, INC.,

       Plaintiff,

v.

CENTERRE CONSTRUCTION, INC.; MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC; BERKLEY REGIONAL INSURANCE COMPANY; BERKLEY SURETY GROUP, LLC,

       Defendants.

---

**ORDER**

---

Pursuant to the authority granted this court under Federal Rule of Civil Procedure 12(b)(6) and the Federal Arbitration Act 9 U.S.C. § 3 it is hereby ordered that:

☐ Plaintiffs' Miller Act Claim (Count II of Plaintiffs' Complaint) is dismissed against defendant Berkley Surety Group, LLC for failure to state a claim upon which relief can be granted.

☐ Plaintiffs' Miller Act Claim (Count II of Plaintiffs' Complaint) is dismissed against defendants Matsuo Engineering Centerre Construction a Joint Venture, LLC, Berkley Regional Insurance Company, and Berkley Surety Group, LLC for failure to state a claim upon which relief can be granted.

☐ Plaintiff RK Mechanical, Inc.'s Breach of Contract Claim (Count I of Plaintiffs' Complaint) is dismissed against defendant Centerre Construction, Inc. for failure to state a claim upon which relief can be granted.

☐ Plaintiffs' action is stayed pending completion of the administrative dispute resolution procedures under the Contract Disputes Act, 41 U.S.C. § 7101 *et. seq.,* as mandated by the parties' Agreement and the Prime Contract.

☐ Plaintiffs' action is stayed pending completion of non-binding mediation and arbitration as mandated by the parties' Agreement.

**IT IS SO ORDERED.**

_____
J.

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2015, a true and correct copy of the foregoing Motion to Dismiss, or in the Alternative, to Stay was filed with the Clerk of the U.S. District Court for the District Court of Colorado using the CM/ECF system, which will send an email notification of this filing to the following individuals:

Buck S. Beltzer, P.E., Esquire
Beltzer, LLC
P.O. Box 202396
Denver, CO  80220
Telephone:  (720) 277-2113
buck@beltzerllc.com
*Attorney for Plaintiff,*
*RK Mechanical, Inc.*

Respectfully submitted,

*/s/ Edward T. DeLisle*
Edward T. DeLisle, Esquire
Cohen Seglias Pallas
Greenhall & Furman, PC
30 South 17th Street, 19th Floor
Philadelphia, PA  19103
Telephone:  (215) 564-1700
Facsimile:  (215) 564-3066
edelisle@cohenseglias.com

*Attorney for Defendants,*
*Centerre Construction, Inc., Matsuo Engineering*
*Centerre Construction a Joint Venture, LLC,*
*Berkley Regional Insurance Company, and Berkley*
*Surety Group, LLC*